*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0017p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LEONARD HALE, Individually and as Next Friend of
Sean Lysher and Shanna Lysher; SEAN LYSHER, a
Minor; SHANNA LYSHER, a Minor,
                                        *Plaintiffs-Appellees,*

        *v.*

SCOTT KART,

                                        *Defendant-Appellant.*

No. 03-1793

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-74689—John Feikens, District Judge.

Argued: October 28, 2004

Decided and Filed: January 13, 2005

Before: KENNEDY and GILMAN, Circuit Judges; HOOD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Marcia L. Howe, JOHNSON, ROSATI, LABARGE, ASELTYNE & FIELD,
Farmington Hills, Michigan, for Appellant. George D. Lyons, BRANDY & LYONS, Jackson,
Michigan, for Appellees. **ON BRIEF:** Marcia L. Howe, JOHNSON, ROSATI, LABARGE,
ASELTYNE & FIELD, Farmington Hills, Michigan, for Appellant. George D. Lyons, BRANDY
& LYONS, Jackson, Michigan, for Appellees.

---

## OPINION

---

        KENNEDY, Circuit Judge. Plaintiff Leonard Hale brought this § 1983 action against several
officers and several municipalities alleging that they conducted an unconstitutional search of his
residence. The district court dismissed all defendants save one on the basis of qualified immunity,
or on other grounds. The remaining defendant, Scott Kart, appeals the district court's failure to
award him summary judgment on the grounds of qualified immunity.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by
designation.

## BACKGROUND

Plaintiff Leonard Hale called police to his apartment due to a domestic dispute between plaintiff and the mother of two of his children, JeriJo Lysher. Lysher consumed significant quantities of alcohol during the several hours of her birthday celebration there and she became belligerent. Plaintiff requested that Lysher, who did not reside there, leave and she became even more belligerent. According to plaintiff, Lysher wanted him to drive her home while he wanted her to call her mother, with whom she lived, to come and get her. Plaintiff called the police and asked them to remove Lysher from his home. Officer Jacobson, of Blackman Township's Police Department, responded and informed Lysher that she had to leave. According to Officer Jacobson, while Lysher was still in the house, she informed him that plaintiff had large amounts of prescription medication and cash in his bedroom. Lysher also informed Officer Jacobson that plaintiff was illegally selling prescription medication. Plaintiff testified that he did not hear these accusations, explaining he was at the far side of the room. No search was conducted at that time. Officer Jacobson instructed Lysher to gather her things and leave. Lysher complied with this directive. She and two of her children (not the children she had with Hale) left without incident.[1]

Officer Jacobson drove Lysher to the police station and requested that a patrol car conduct surveillance on plaintiff's residence. At the station, Officer Jacobson called defendant Kart, a deputy with the county sheriff's department, who was the lead investigator into a recent prescription drug theft from a local pharmacy, to question Lysher. Officer Jacobson related Lysher's story to Kart and told him that plaintiff had informed Officer Jacobson that he could not search the bedroom without a warrant.[2] Lysher then told defendant Kart that plaintiff was illegally selling prescription drugs. She also told him that she had stayed at plaintiff's apartment for two weeks[3] and that she witnessed several drug sales. Lysher described large amounts of currency she had seen in the same bedroom as the drugs.

Defendant Kart was aware that Lysher had used prescription drugs illegally in the past. Defendant knew that Lysher was angry at plaintiff and that she had consumed alcohol. Finally, Lysher admitted to defendant that she had taken drugs given to her by plaintiff at some point during her stay. Defendant Kart also knew that when Officer Jacobson asked her to gather her belongings and leave with her children, she did so without protest.

Defendant Kart used his interview with Lysher as a basis for an affidavit in support of the search warrant for plaintiff's residence. He included all of the details about the location of the cash and prescription drugs, the fact that a witness (Lysher) had been at the apartment for two weeks, the fact that Lysher had been given Vicadin by plaintiff, the sales Lysher claimed to have witnessed, and that she had seen the currency on the day of the affidavit. He also included the fact that a patrol car was currently conducting surveillance on plaintiff's residence. Defendant Kart did not include the

---

[1]Lysher has at least four children, two with the plaintiff (these two children are also plaintiffs in this suit), and two of whom plaintiff did not father. Plaintiff has custody of the two children he fathered with Lysher, and those two children reside with him. The other two children accompanied Lysher to plaintiff's apartment for the birthday party and left with her when the police arrived. They are not parties to this suit.

[2]Plaintiff does not dispute making this statement. He merely said in his deposition that he did not recall making it.

[3]Plaintiff disputes this portion of Lysher's account. He maintains that she was only at his residence for her birthday party. However, no evidence on the record indicates that defendant Kart or Officer Jacobson had any reason to question the accuracy of this portion of Lysher's account.

fact that Lysher was angry at plaintiff, nor did he include the fact that Lysher had consumed alcohol while at plaintiff's apartment.

The affidavit served as the basis for the search warrant defendant Kart obtained from the Michigan 12th District Court Judge. Defendant Kart and other officers searched plaintiff's house pursuant to the warrant. Although some prescription drugs and $9500 in currency were found at the house, no charges were filed against plaintiff.

Plaintiff, on his own behalf and on behalf of his two minor children, brought this § 1983 action against all of the officers involved in the search, as well as both the County of Jackson and the Township of Blackman. The district court dismissed plaintiff's claims on summary judgment with respect to all defendants except Defendant Kart on the grounds that they were entitled to rely on the warrant and that there was nothing unconstitutional in the manner in which it was executed. The district court ruled that summary judgment was unwarranted with respect to defendant Kart because "a reasonable jury can find that Lysher's credibility was so lacking that it was unreasonable for Kart to rely on the warrant. Thus, a genuine issue of material fact exists and summary judgment is denied against Kart..." *Hale, et al., v. Kart, et al.*, 2003 WL 21309106 *3 (E.D. Mich.). In a footnote it expounded on this holding by stating:

> To be sure, the fact that Lysher was intoxicated and highly agitated does not mean as a matter of law, that a reasonable officer would not trust Lysher's tip. Indeed, some people are more candid when they are drunk than when they are sober. Nevertheless, viewing the evidence in a light most favorable to the plaintiffs, I must conclude that whether a reasonable officer would believe Lysher's tip in her intoxicated state is a question of fact for the jury.

*Id*. Defendant Kart appeals that denial. For the reasons that follow, we **REVERSE**.

## ANALYSIS

The district court denied defendant Kart qualified immunity and thus summary judgment because it believed that a factual dispute related to probable cause existed. We review this holding de novo. *Adams v. City of Auburn Hills*, 336 F.3d 515, 518 (6th Cir. 2003). We have jurisdiction to hear his appeal. *Id*. ("A district court's decision rejecting an individual defendant's claim to qualified immunity is immediately appealable to the extent that it raises a question of law, notwithstanding the absence of a final judgment.").

The question for this court in denying qualified immunity in a § 1983 action is whether the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *Malley v. Briggs*, 475 U.S. 335, 343-45 (1986). While we look at the facts in the light most favorable to the plaintiff, the facts we are looking at are those known to Kart when he sought the warrant. We apply a standard of objective reasonableness. *Id*. at 344-45 (1986). *Cf. Devenpeck et al., v. Alford*, ___ S.Ct. ___, 2004 WL 2847718 (indicating that the Supreme Court continues to support objective standards in the context of qualified immunity cases).

In § 1983 actions, an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant. *Malley*, 475 U.S. at 343-45. Therefore, under the appropriate standard, we must first determine whether the warrant is so lacking in the indicia of probable cause that defendant Kart's reliance on the warrant is unreasonable. Because, defendant Kart's affidavit provided the sole basis for the warrant, we must evaluate the sufficiency of the affidavit.

A.        The affidavit, on its face, is sufficient.

Affidavits do not have to be perfect, nor do they have to provide every specific piece of information to be upheld:

> Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out; if a CI saw guns, he is not required to explain how he knew what a gun looks like. Nor is an affidavit required to present proof that would without question withstand rigorous cross-examination. . . . Taken as a whole, the affidavit provided sufficient facts from which the magistrate could draw an independent conclusion as to the probability (certainty is not required) of what it alleged a search would disclose.

*United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc). In addition, we look at warrants, and, in this case, the affidavit supporting the warrant, using a totality of the circumstances test. *Illinois v. Gates et ux.*, 462 U.S. 213, 230-31 (1983). The totality of the circumstances test requires us to evaluate the probabilities of finding criminal activities based on the evidence provided in the affidavit, as opposed to requiring that the evidence in the affidavit guarantees the discovery of criminal activity. *Id.*

In this case, the affidavit was sufficient on its face such that an officer could rely on it. The affidavit described the probable existence of large quantities of prescription medication and cash in a specific location in an apartment. In addition, the affidavit disclosed the basis for the officer's belief, disclosed by a witness, that was specific. The witness (Lysher) claimed to be present during drug sales and she claimed to have seen large quantities of U.S. currency present at the location. Her presence in the apartment, her relationship to the apartment's tenant, and her reason for being there, are explained. Lysher is not an anonymous or paid informant; her identity is disclosed. Finally, the affidavit contains Lysher's admission that she had been given Vicadin by Hale. The affidavit also stated that defendant Kart was the lead investigator in a recent break-in and theft of large quantities of Vicadin (as well as other prescription drugs) from a local drug store.

All of these specific facts present ample evidence of probable cause that drugs and their proceeds would be found at plaintiff's apartment. In addition, because Lysher admitted in her statement to defendant Kart that Hale gave her a prescription drug, her account becomes even more credible. *United States v. Harris,* 403 U.S. 573, 583 (1971) ("People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their admissions."). Since she was at the apartment when removed by the police, her opportunity to have seen the drugs and money was confirmed by her removal from the premises. The affidavit (and thus the warrant), on its face, and looking at the totality of the circumstances, contains sufficient indicia of probable cause to allow an officer or a judge to reasonably rely on it. Even if the warrant is sufficient, however, defendant cannot rely on it if he knowingly made false statements in the affidavit such that, but for those falsities, the warrant would not have been issued. *Yancey*, 876 F.3d at 1244. Therefore we must also engage in a second inquiry: did plaintiff provide evidence that would undermine defendant's reliance on the warrant?

B.      No evidence exists with respect to either defendant's intent to mislead by omission or to whether the omitted evidence would be critical to a finding of probable cause.

In *Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998), this court clarified our standard for evaluating officers' conduct in the procurement of search warrants: "except in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays*, 134 F.3d at 816 (italics in original) (the logic in *Mays* is obviously meant to apply to § 1983 plaintiffs as well, given

that *Mays* was a § 1983 case).[4]  In *Atkin*, this court further clarified the high bar to which we subject these sorts of inquiries: "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *United States v. Atkin*, 107, F.3d 1213, 1217 (6th Cir. 1997) (internal citations omitted) ("defendant" is proper in this case as this case dealt with suppression of the evidence in a criminal trial).

These two combined holdings instruct district courts that plaintiffs must make a strong preliminary showing "that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause." *Mays*, 134 F.3d at 816 (italics in original).  Only if the plaintiff makes this "strong preliminary showing" may the court "consider the affidavit including the omitted portions and determine whether probable cause still exists." *Atkin*, 107, F.3d at 1217.  Absent this first preliminary showing, the district court may not engage in the second inquiry related to probable cause.

Therefore, our inquiry is whether the plaintiff made a strong preliminary showing that the affiant intended to mislead the judge by omitting information from the affidavit.  Only then can we address the question of whether a factual matter related to probable cause exists that would preclude summary judgment.  If one exists, Kart is not entitled to qualified immunity at this stage of the proceedings; instead, we must remand to the district court for submission of that factual matter to a jury with instructions on how those factual matters relate to the existence of probable cause.  In this case, plaintiff has not provided evidence (disputed or otherwise) on either point.

    1.      Plaintiff provided no evidence of defendant's intent to mislead.

*Mays* indicates that in omission cases, *Franks* is inapplicable unless the plaintiff makes a strong preliminary showing of defendant's intention to mislead in making the omissions. *Mays*, 134 F.3d at 816.  While this court has not described in great detail what types of evidence will satisfy the strong preliminary showing of an intention to mislead in omission cases, it seems clear that plaintiff has not met that burden here.

There is no evidence on the record that would establish defendant's intent to mislead the judge.  The mere existence of omissions alone is ordinarily not enough to make this strong preliminary showing.  We do not foreclose the possibility that strongly material omissions could provide evidence of an intention to mislead; however, there is no evidence that the omissions of which plaintiff complains were material to the grant of the search warrant.  Put another way, plaintiff cannot (and on appeal does not) argue that the search warrant would not have been granted had the omissions been included. Plaintiff merely argues that defendant Kart should have engaged in further investigation before seeking a warrant.  Such a claim is not enough, in this circumstance, to meet plaintiff's burden under the first prong of the *Mays* test because it does not speak to defendant Kart's

---

[4] "In *Franks*, the Court held that a party may only challenge the veracity of an affidavit if that party can make a 'substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth, was included by the affiant in the warrant affidavit,' and that the allegedly false statement was necessary for a finding of probable cause.  The inquiry does not continue if the court finds that the exclusion of the allegedly false statement does not result in a lack of probable cause.  If the party succeeds in meeting this burden, the party is entitled to a hearing to determine if a preponderance of the evidence supports the allegation of a lack of veracity.  While this case does not involve any allegedly false statements, we have previously held that the Franks doctrine applies to omissions of information from affidavits as well." *Mays*, 134 F.3d at 815 (citing *Franks v. Delaware*, 438 U.S. 154 (1978) and *United States v. Bonds*, 12 F.3d 540, 568-69 (6th Cir. 1993)).

intent to mislead, it only speaks to the thoroughness of his investigation.[5] As a result, on this basis alone, defendant Kart deserves qualified immunity. We address the second prong of the *Mays* test to add further clarity.

> 2.        The omissions are not critical to the finding of probable cause.

Under the second prong of the *Mays* test, if the omissions were critical to the finding of probable cause, we must deny qualified immunity. *Mays*, 134 F.3d at 816. In order to determine whether the omissions were critical to the finding of probable cause, this court has indicated that the affidavit should be reevaluated with the omitted portions included to see if those omitted items would change a probable cause determination. *United States v. Hill*, 142 F.3d 305 (6th Cir. 1998). Our consideration of this prong is complicated somewhat by the fact that this is a civil § 1983 case that comes before us on summary judgment. We have, however, the depositions of all the witnesses to Lysher's condition at the time she made the statements Kart relied on in formulating his affidavit.[6]

While it is true that where a genuine issue of material fact exists it is appropriate to deny summary judgment under FED. R. CIV. P. 56(C), that fact does not answer the question of whether probable cause determinations in § 1983 cases should be submitted to a jury. While the facts underlying probable cause, if in dispute, must be submitted to a jury, probable cause determinations are legal determinations.

> a.        Probable cause determinations are legal determinations.

When no material dispute of fact exists, probable cause determinations are legal determinations that should be made by a court. *Stewart v. Sonneborn*, 98 U.S. 187, 194 (1878); *S.P. v. City of Tacoma Park, Md.*, 134 F.3d 260, 272 (4th Cir. 1998) ("When, as in this case, there is no genuine issue of material fact, the existence of probable cause becomes a purely legal question subject to de novo review."); *Potts v. City of Lafayette*, 121 F.3d 1106, 1112 (7th Cir. 1997); *Smith v. Tucker*, 304 A.2d 303, 306 (D.C. 1973) ("It is the duty of the court when the facts are in dispute to submit the question to the jury with the instructions that if they find the facts to be one way they amount to probable cause and if they find them to be another that they do not amount to probable cause."). *See Yancey*, 876 F.2d at 1243. *Cf. Diamond v. Howd*, 288 F.3d 932, 936 (6th Cir. 2002); *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001); *Gardenheir v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) ("In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.") (All four of these cases discuss probable cause in the context of an arrest).

All of these Sixth Circuit cases stand for the proposition that a jury trial is appropriate where reasonable disputes of material fact exist on facts underlying a probable cause determination. However, where only one reasonable reading of the facts is possible, i.e., where the facts that relate

---

[5] Additionally, our holding today does not foreclose the possibility that in a § 1983 action, where a plaintiff makes a disputed showing of an affiant's intention to mislead, the facts underlying that alleged intention to mislead may have to be submitted to a jury rather than a judge deciding them on summary judgment. *Mendocino Environmental Center, et al. v. Mendocino County, et al.*, 192 F.3d 1283 (9th Cir. 1999). Suffice it to say, no disputed facts on defendant's intention to mislead exist, therefore we reserve a ruling on this question for another time.

[6] It is important to note that in determining whether defendant Kart should be denied qualified immunity in connection with the issuance of the search warrant, we must limit our factual inquiry only to the facts known to defendant Kart at the time he executed his affidavit. Here he had the information given to him by Lysher and the information given him by Officer Jacobson as to what occurred at Hale's apartment. Relying on any other information than that which he was told by those two people, or that which he could have reasonably deduced from his conversations with them impermissibly creates liability on the basis of facts not known to defendant Kart when he sought the warrant.

to probable cause are not in dispute, the question of probable cause retains its legal character and should be decided by the judge. We admit that some of these Sixth Circuit cases are confusing and many of the factual recitals in them do not lend themselves to a clear understanding of exactly what facts were in dispute. Nevertheless, the rule that probable cause is a legal question seems clear.

If disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts. Similarly, with qualified immunity, a court can submit to the jury the factual dispute with an appropriate instruction to find probable cause and qualified immunity if the factual inquiry is answered one way and to find probable cause and qualified immunity lacking if the inquiry is answered in another way. However, the jury does not decide whether the facts it has found are legally sufficient to amount to probable cause or entitlement to qualified immunity.

For instance, in this case, if witnesses gave contradictory accounts as to whether Lysher was angry at plaintiff, a jury would have to determine if she was angry and if her anger was so great that an officer would have been unreasonable to believe her. Similarly, if conflicting testimony existed as to whether Lysher was so intoxicated or inebriated when she spoke with defendant Kart as to make reliance on her statements clearly unwarranted, a jury would have to determine her level of intoxication. The judge could instruct the jury that if they find a certain level of intoxication, they could use that factual finding to find that the officer could not rely on her statements. Omitting that information then leads to the conclusion that the officer submitted an affidavit he knew or should have known was false. That false affidavit thereby deprives the resulting warrant of probable cause.

Given then, that probable cause is a legal question, but that underlying factual disputes related to probable cause must be submitted to a jury, our inquiry on review must be whether sufficient facts are in dispute with respect to probable cause to require fact-finding by a jury here. If none of the facts are in dispute, we can make a final legal determination on whether plaintiff meets the second prong of the *Mays* test as only legal questions would remain.

>          b.          None of the facts concerning the omissions are in dispute.

It is unclear from the District Court's opinion whether the district court treated Lysher as an anonymous or paid informant for whom some independent corroboration by the police was required and was lacking, or whether it believed that there was disputed evidence that her anger or intoxication when interviewed by Kart were such that it was unreasonable for Kart to rely on her information. On the first possible reading, it is true that anonymous informants generally cannot establish probable cause alone. *See Illinois v. Gates*, 462 U.S. 231, 227-28 (1983). Lysher, however, was neither an anonymous nor a paid informant. Lysher's identity and her relationship to the tenant of the apartment (the plaintiff) were disclosed. She was not a paid informant, nor an anonymous tipster as plaintiff contends, but an ordinary citizen. Therefore, no further investigation was required for the warrant to be sufficient.

As to the second possible reading, both plaintiff and defendant agree that Lysher consumed alcohol. *Hale,* 2003 WL 21309106 at *3. However, the undisputed testimony indicates that when the police arrived, although Lysher had consumed several beers over the course of the day, and although the plaintiff claims Lysher took some form of drugs (although he did not witness it), Lysher, in response to the officer's request, gathered her things and walked out the door and got into the police car. In addition, as noted above, although she was belligerent to plaintiff, no one disputes that she was not belligerent to Officer Jacobson and was able to hold extended conversations with Officer Jacobson and the defendant. Hale testified that he was unable to hear her conversation with Officer Jacobson from the other side of the room. Nothing in any conduct they observed would require a reasonable officer to reject her allegations. Therefore, because, on our examination of the

record, we do not find any material factual dispute that a jury must resolve, summary judgment is appropriate.

### c.　The omissions are not critical to a finding of probable cause.

Finally, because no dispute of fact exists with respect to the omissions, we can rule on whether the omissions are critical to the finding of probable cause. *Mays*, 134 F.3d at 816. We do not believe that the omissions in question are critical in determining probable cause.

The district court acknowledges that a reasonable officer can rely on information given him by someone who has consumed alcohol and in the words of Kart was "a little bit intoxicated." Kart Dep., p. 57. Plaintiff's description of Lysher's condition after he called the police to remove her is that: "As I recall, she just set there and waited." App. p. 82. The officers removing Lysher were there for five minutes. App. p. 85. Although she made accusations against Hale about drug possession, they could not have been loud since plaintiff testified that he had not been able to hear what she said although he was in the same room (albeit at the other end of the room). Additionally, plaintiff testified that she had taken drugs while he was out buying more beer so that her head was nodding and she was falling asleep when he returned. But, Lysher's alleged ingestion of drugs and odd behavior occurred some time earlier, and there is no evidence that this condition was ever observed or could have been, by Jacobson or defendant Kart. Lysher gathered her purse and walked to the police car with her two children. She had an extensive conversation with detective Kart at the police station.

Although it is possible that an angry and intoxicated person may be less reliable than a detached and uninterested observer who is sober, it is equally possible that those same factors can make a witness more inclined to be truthful than they otherwise might. Those factors, if included, would not have so undermined the credibility of the witness or the affidavit as to cause a judge to deny the warrant for lack of probable cause. More importantly, they would not cause an officer to know that the warrant is so lacking in the indicia of probable cause that his belief in the existence of probable cause was unreasonable. Because plaintiff fails to meet his burden on either prong of the *Mays* test, the defendant is entitled to qualified immunity. The action against Kart should have been dismissed on summary judgment.

### CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment with respect to defendant Kart and **REMAND** with instructions to enter summary judgment for defendant Kart on the basis of qualified immunity.