KAREN NELSON MOORE, Circuit Judge,
dissenting.
I agree with the majority’s description of this circuit’s taxonomy of informants; our caselaw identifies named informants, unnamed (or confidential) informants who are known to the police but not to the magistrate, and anonymous informants. Maj. Op. at 703 n. 1. As each category of informant presents its own issues of reliability, the majority is correct that we apply different legal standards in cases involving unnamed informants, anonymous informants, and named informants. This case involves a named informant, so I direct my attention to our precedent in that narrow area of law. A review of this court’s precedent on named informants leads me to conclude that the naming of informants indicates reliability only when the informants willingly and knowingly assent to an officer naming them and the risk of prosecution inherent in that identification. In this case, because the informant was hallucinating, I cannot conclude that she willingly and knowingly assented. In the absence of any other indicia of reliability, the fact that the informant was named does not alone provide a substantial basis for probable cause.
That an informant is named supports a conclusion of reliability only to the extent that it signifies that the informant knowingly risks punishment if the tip is faulty. The majority opinion references United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), where four members of the Supreme Court suggested that an informant’s statement against his penal interest is reliable because “[p]eople do not lightly admit a crime and place critical evidence in the hands of police,” id. at 583, 91 S.Ct. 2075 (Burger, C.J., plurali *705 ty). Significantly, Chief Justice Burger spoke for only four members of the Court.[2] The true relevance of Harris is to help explain our distinction between named informants on the one hand, and unnamed and anonymous sources on the other. 2 Wayne R. LaFave, Search and Seizure § 3.3(c) at 133 (4th ed.2004) approving of the analysis that Justice Harlan’s opinion for four Justices “did not so much quarrel with the general proposition that a genuine declaration against penal interest would be some guarantee of trustworthiness, but only with the application of that principle to” certain unnamed informants (quoting Stanley v. State, 19 Md.App. 507, 313 A.2d 847, 856 n. 8 (Md.Ct.Spec.App.1974)).
Chief Justice Burger’s opinion in Harris does not, by itself, explain why our cases give additional credence to a named informant; the danger to the informant inherent in admitting a crime to the police exists regardless of whether the informant is named in the affidavit or not. See Harris, 403 U.S. at 585, 91 S.Ct. 2075. Indeed, the informant in Harris was never named for the magistrate. Id. at 575, 91 S.Ct. 2075. Justice Harlan’s opinion in Harris, however, sheds light on the basis for the distinction between named and unnamed or anonymous sources. Justice Harlan, leading three other Justices, thought that a statement against penal interest was not necessarily an indicator of reliability. Id. at 594, 91 S.Ct. 2075 (Harlan, J., dissenting). In support of this argument, Justice Harlan noted that an unnamed informant remains unnamed because the police intend to continue using the source.[3] If the police intend to keep their source viable, the informant likely does not fear prosecution, even for a statement against his penal interest. Id. at 595, 91 S.Ct. 2075. Thus, the distinction between named and unnamed-but-known informants has significance because naming removes the cloak of protection against prosecution whereas “an admission against penal interest” by someone protected by the police “carries little weight.” LaFave, § 3.3(c) at 136.
According to Justice Harlan, the mere fact that a statement happens to be against an informant’s penal interest has no bearing on the informant’s potential veracity. Instead, it is only when an informant recognizes the danger in misleading officers that the informant is more likely to speak truthfully. We have adopted this position in United States v. Pelham, 801 *706 F.2d 875 (6th Cir.1986), cert. denied, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987), where we emphasized that an informant was “willing to be named in the affidavit.” Id. at 878 (emphasis added). More recently, in United States v. McCraven, 401 F.3d 693 (6th Cir.), cert. denied, 546 U.S. 1010, 126 S.Ct. 639, 163 L.Ed.2d 517 (2005), a case the majority relies upon heavily, this court again spoke of “an informant’s willingness ” to be named. Id. at 698 (emphasis added). The choice of words we have used repeatedly emphasizes Justice Harlan’s point: a statement against penal interest can indicate reliability only where the informant understands his statement as a threat against his penal interest and recognizes the potential for prosecution. See United States v. Chafin, 622 F.2d 927, 930 (6th Cir.) (describing the choice to admit to associating with the principals to a murder as one that an informant “would not lightly make”), cert. denied, 449 U.S. 984, 101 S.Ct. 401, 66 L.Ed.2d 246 (1980); see also Harris, 403 U.S. at 583, 91 S.Ct. 2075 (Burger, C.J., plurality) (noting that “[p]eople do not lightly admit a crime” and thus implying that it is a considered and deliberate choice).
In some cases this court has not used the language of choice and awareness. In those circumstances, however, there were other reasons for crediting the informant’s testimony. For instance, in some cases the police bolstered the informant’s testimony through corroboration. See, e.g., Wolfe v. Perry, 412 F.3d 707, 718 (6th Cir.2005); United States v. Rosenbarger, 536 F.2d 715, 719 (6th Cir.1976), cert. denied, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977). In other cases this court relied on a statute that made it a crime to provide to the police false information. See, e.g., United States v. Couch, 367 F.3d 557, 560-61 (6th Cir.2004); United States v. Miller, 314 F.3d 265, 270 (6th Cir.2002), cert. denied, 539 U.S. 908, 123 S.Ct. 2261, 156 L.Ed.2d 121 (2003). As this case also arose in Kentucky, the same statute involved in Couch and Miller is relevant here. See Ky.Rev.Stat. Ann. § 519.040(1). The fact that the statute was in place, however, does not mean that any informant is necessarily reliable. Instead, Harris’s knowledge-and-willingness rationale applies; for the statute to impact the informant’s veracity, the informant must have been aware that lying to the police would be a dangerous choice. See LaFave, § 3.3(c) at 149-50 (“[I]t may be argued that information given to police may be found reliable where the making of a false crime report is a criminal offense, in that once again adverse consequences may follow if the allegations later turn out to be untrue, but this would not be persuasive absent a showing the informant was aware that such an offense existed and that there was a real risk of prosecution should his information prove false. ” (emphasis added) (footnotes omitted)).
I dissent because Sarah Lilly, the informant here, despite admitting to buying and using methamphetamine against her penal interest, was not a reliable informant. At the time they called the police, Lilly and her husband were in the throes of a hallucinogenic episode; they believed the floor was pushing upwards, and that a crowd of people was outside their home pulling a freezer from underneath their house. Joint Appendix (“LA”) at 39 (Uniform Offense Rep. at 3). The very fact that the Lillys saw no problem with calling the police while under the profound effects of methamphetamine belies any assertion that they could appreciate the risk in making incriminating statements to the police. Lilly’s statements to the police were not the product of the considered and careful weighing of the threat to her penal interests that our precedent requires before such statements can be considered reliable. See Armour v. Salisbury, 492 F.2d *707 1032, 1035 (6th Cir.1974) (concluding that a statement against penal interest is only “sometimes conclusive” and evaluating the entirety of the affidavit for credibility); see also State v. Gamage, 340 A.2d 1, 17 (Me. 1975) (holding that a statement against penal interest “may justify an affiant’s reasonable belief of credibility of the informant’s story” (emphasis added)). Instead, Lilly’s tip was nothing more than the statement of an uncorroborated and unreliable informant, which cannot alone sustain probable cause.[4]
The majority suggests that we should still consider Lilly’s statement reliable because sometimes intoxicated people are more honest than their sober counterparts. Maj. Op. at-. To buttress this assertion, the majority relies upon Hale v. Kart, 396 F.3d 721 (6th Cir.2005). Unlike the case at hand, however, in Hale the informant was so minimally intoxicated that the officers could not have known. Id. at 730 (concluding “there is no evidence that [the intoxication] was ever observed or could have been” observed by the officer). Similarly, in the circumstance that officers “did not feel that [the informant] was either under the influence of heroin or in a state of withdrawal,” the Ninth Circuit did not consider the statements “per se unreliable.” United States v. Damitz, 495 F.2d 50, 56 (9th Cir.1974). In stark contrast, in this case the officer was immediately suspicious of Lilly’s sobriety, J.A. at 39 (Uniform Offense Rep. at 3) (“When she opened the door she appeared to possibly be under the influence of a narcotic.”), and quickly confirmed those suspicions, id. Although our case law certainly does not require toxicology reports before an informant can be considered reliable, I believe nothing in our precedent suggests that, when the informant is clearly hallucinating, the police are justified in concluding that the informant is reliable. Indeed, common sense compels the conclusion that clearly hallucinating informants are not reliable and their accusations cannot serve as the basis for probable cause without independent corroboration. See Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (calling probable cause a “eommonsense, practical question”); Harris, 403 U.S. at 583-84, 91 S.Ct. 2075 (Burger, C.J., plurality) (noting that the statement against an informant’s penal interest is reliable because “[cjommon sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements.” (emphasis added)); Armour, 492 F.2d at 1035 (holding that a statement against penal interest is only “sometimes conclusive” and applying Harris’s common-sense standard to determine the existence of other indicia of credibility); Wilson v. State, 314 A.2d 905, 907 (Del.1973) (“[I]t appears that at the time the informant related the information to the police she was hospitalized for a drug overdose. Because her rationality and credibility could have been impaired thereby, it was incumbent upon the police, *708 in our opinion, to verify her statements. ..
Lastly, in further support of finding the informant reliable, the majority opinion heavily cites United States v. McCraven, 401 F.3d 693 (6th Cir.2005), to assert that a statement against penal interest connotes reliability. I believe this reliance is misplaced. First, McCraven contains only dicta regarding an informant’s reliability. The McCraven court thought the sufficiency of the affidavit was “a close question,” and instead of resolving the matter, simply decided that the search in question was in good-faith under United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and was therefore valid “even if the affidavit be deemed insufficient.” McCraven, 401 F.3d at 698. Second, even if the McCraven court had actually addressed the issue of probable cause, McCraven involved an unnamed, confidential informant, so this court merely noted for the sake of comparison that being named is a “predictor of reliability,” id. at 698, but never said naming an informant is sufficient for a finding of reliability. Because McCraven is a Leon case and expressly declined to resolve whether the affidavit was sufficient, its comments are dicta and the case is inapposite.
In contrast, I believe that this court’s precedent establishes that where an informant is incapable of willingly considering the implications of admitting involvement in a crime to the police, then the informant is not per se reliable. The magistrate must make “a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant’s tip.” Gates, 462 U.S. at 234, 103 S.Ct. 2317. In this case, because the police did nothing else other than rely on the testimony of an unreliable and hallucinating informant, the affidavit failed to provide a substantial basis for probable cause. For these reasons, I respectfully dissent.

. Although Justice Stewart joined with Chief Justice Burger in the judgment of the court, he signed on only to the part of the opinion that considered the entire factual basis for the warrant, Harris, 403 U.S. at 579-80, 91 S.Ct. 2075 (”[W]e conclude that the affidavit in the present case contains an ample factual basis for believing the informant which, when coupled with the affiant’s own knowledge of the respondent's background, afforded a basis upon which a magistrate could reasonably issue a warrant.”), and did not make any assertions regarding the effect of a statement against penal interest other than to note that the informant made one, id. at 580, 91 S.Ct. 2075 (“The accusation by the informant was plainly a declaration against interest since it could readily warrant a prosecution and could sustain a conviction against the informant himself.”).

. Revealing the identity of an informant almost always makes the source worthless in the future. See William J. Stuntz, Warrants and Fourth Amendment Remedies, 77 Va. L.Rev. 881, 939 (1991) (“In those rare cases where magistrates do require disclosure of the identity of a police informant, the government concedes defeat rather than disclose, thereby sacrificing the search (and presumably sometimes the whole prosecution). This practice confirms what should perhaps be obvious: informants who offer valuable tips to the police will disappear if they think their position might be compromised by disclosure, even disclosure only to judicial officers. It also suggests that the real choice the system faces is not between unnamed informants and named ones, but between unnamed informants and none at all." (footnote omitted)).

. As a variant of the statement-against-penal-interest approach, some courts have found that informants are reliable when they turn over narcotics to the police. See, e.g., United States v. Damitz, 495 F.2d 50, 55 (9th Cir.1974); Schmidt v. State, 77 Wis.2d 370, 253 N.W.2d 204, 208 (1977); State v. Gamage, 340 A.2d 1, 17 (Me.1975); State v. Appleton, 297 A.2d 363, 369 (Me. 1972). Again, just like with statements against penal interests, the assumption of reliability makes sense only where the informant makes a willing and conscious decision. See Appleton, 297 A.2d at 369 (discussing how an informant will turn over narcotics only when "he is certain in his own mind that his story implicating the persons occupying the premises where the sale took place will withstand police scrutiny”). Although Lilly did turn over to the police some crystal methamphetamine, J.A. at 39-40 (Uniform Offense Rep. at 3-4), her hallucinogenic state suggests she could not have made a considered decision regarding the contraband.