NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0084n.06

No. 21-2668

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

GARY ANDERSON,

  Plaintiff-Appellee,

v.

LIEUTENANT ALEXIS HOLMES, LIEUTENANT
BRIAN DUNESKE, POLICE OFFICER RICHARD
MEREDITH, POLICE OFFICER ERIC EAVES, and
LIEUTENANT PRIDE JOHNSON,

  Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Feb 25, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before: GILMAN, KETHLEDGE, and LARSEN, Circuit Judges.

KETHLEDGE, Circuit Judge. Gary Anderson, a theater instructor at Wayne County Community College, filed this § 1983 action against several police officers after he was arrested in a campus parking lot. The officers appeal the district court's denial of their motion for summary judgment, in which they sought qualified immunity. We dismiss the appeal for lack of jurisdiction.

I.

Gary Anderson teaches theater at Wayne County Community College. In January 2018, Anderson attended a faculty orientation for the college. One of the presentations was on active shooters. During the presentation, Anderson, who was sitting about ten rows from the back, raised his hand to ask a question. The presenters did not promptly respond to him, so Anderson stood up, keeping his hand raised. At that point, the presenters acknowledged him, and Anderson loudly

asked, "Why are we focusing on the Virginia Tech situation when most of these motherfuckers aren't Asian?" He then left the auditorium.

Lieutenant Alexis Holmes was in the auditorium during the presentation. When she heard Anderson's question and watched him walk out of the auditorium, Holmes called her supervisors to tell them that someone in the auditorium was "cursing and causing a disturbance." She then gave a description of Anderson.

As Anderson was leaving the auditorium, Lieutenant Brian Duneske (who had also been in the auditorium) approached Anderson and asked for his identification. Anderson refused. Duneske told Anderson that he could either provide identification or leave, and Anderson agreed to leave. Anderson walked down the hallway toward the parking lot, stopped at a restroom on his way out, exited the building, and walked to his car. Duneske and Holmes followed him, continuing to demand identification.

Anderson got into his car and still refused to identify himself. By this time, several other officers had joined Duneske and Holmes. Dunekse stood behind Anderson's car and directed one of the officers to park a patrol vehicle behind Anderson's car, blocking him into his parking space. Anderson began to back the car up, but he stopped when he saw the police vehicle behind him. Holmes then moved to the front of Anderson's car and told him that he was under arrest. The officers struggled to get Anderson out of his car, but he eventually stepped out voluntarily.

Officers Richard Meredith and Eric Eaves handcuffed Anderson. The officers used double handcuffs because of Anderson's large size, but Anderson still complained about the tightness of the cuffs on his wrists. The officers did nothing to loosen the cuffs; instead, they placed Anderson into a patrol vehicle. Anderson claims that, by the time different officers arrived, re-handcuffed

him (this time more comfortably), and transferred him to another police vehicle, his thumbs had gone numb.

After his arrest, Anderson was charged with felonious assault and disorderly conduct, but those charges were later dismissed. Anderson thereafter filed this 42 U.S.C. § 1983 action, alleging that Duneske and Holmes retaliated against him for exercising his First Amendment rights by subjecting him to a wrongful detention; that Duneske unlawfully seized him in violation of the Fourth Amendment; and that Eaves and Meredith used excessive force in violation of the Fourth Amendment and Michigan state law when they handcuffed him. The officers filed a motion for summary judgment on qualified-immunity grounds, which the district court denied. This interlocutory appeal followed.

## II.

We review the district court's denial of qualified immunity de novo. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012). In doing so, "[w]e take the district court's view of the facts in the light most favorable to [Anderson]." *Hayden v. Green*, 640 F.3d 150, 152 (6th Cir. 2011). But we lack jurisdiction over the appeal if the officer's "*sole argument* with the district court's denial of qualified immunity goes to whether there exists a genuine issue of fact for trial." *Gregory v. City of Louisville*, 444 F.3d 725, 743–44 (6th Cir. 2006) (emphasis added).

## A.

Duneske and Holmes argue that they were entitled to qualified immunity on Anderson's claims for First Amendment retaliation and Fourth Amendment wrongful detention because, they say, they had probable cause to arrest Anderson (and therefore probable cause to detain him). The existence of probable cause would defeat both claims. *See Hartman v. Thompson*, 931 F.3d 471,

483–85 (6th Cir. 2019) (First Amendment retaliation); *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) (wrongful detention).

i.

The officers first contend that they had probable cause to believe that Anderson had violated Mich. Comp. Laws § 750.170, which makes it a misdemeanor to "make or excite" a "disturbance" in a "public building." A disturbance, under that law, is "an interruption of peace and quiet; a violation of public order and decorum." *People v. Weinberg*, 149 N.W.2d 248, 252 (Mich. Ct. App. 1967). The officers say that Anderson caused a disturbance when he asked, "Why are we focusing on the Virginia Tech situation when most of these motherfuckers aren't Asian?"

But the facts surrounding what went on in the auditorium are disputed. Anderson testified that he simply asked the panelists his question, listened to the response, and then proceeded to leave. According to Anderson, "[n]o panic existed in the auditorium" and "no one else left the auditorium with" him. Duneske and Holmes, however, say that "Anderson's loud profanity disrupted the meeting by causing onlookers to turn around and [by] creating a sense of panic in the auditorium." The officers' argument here "goes to whether there exists a genuine issue of fact for trial." *Gregory*, 444 F.3d at 743. We therefore lack jurisdiction to consider it. *See Berryman v. Rieger*, 150 F.3d 561, 563–65 (6th Cir. 1998).

ii.

The officers likewise contend that they had probable cause to believe that Anderson had violated Mich. Comp. Laws § 750.81d, which makes it a felony for an individual to "obstruct[] . . . a person who the individual knows . . . is performing his or her duties." According to the statute, to "obstruct" includes "a knowing failure to comply with a lawful command." Mich. Comp. Laws 750.81d(7)(a). The officers say that Anderson obstructed them from performing their duties when

he refused to comply with Duneske's and Holmes's commands that he identify himself as he was leaving the building. All parties agree that the officers told Anderson to identify himself and that Anderson knowingly failed to comply with that command. Thus, the question is whether the command itself was lawful. *See Barrera v. City of Mount Pleasant*, 12 F.4th 617, 622 (6th Cir. 2021).

The officers' command was lawful only if, prior to giving it, the officers had "reasonable suspicion" to believe that Anderson "may be involved in criminal activity." *Id.* (quoting *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 185 (2004)). Otherwise, the officers would have been permitted only to request that Anderson voluntarily identify himself—and Anderson would have been free to refuse. *See Wilkerson v. City of Akron*, 906 F.3d 477, 481 (6th Cir. 2018); *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). Here, Duneske and Holmes contend that they commanded Anderson to identify himself because, they say, they had reasonable suspicion to believe that Anderson had violated Mich. Comp. Laws § 750.170 (the "disturbance" statute). But that contention turns on the same disputed facts (namely, whether Anderson had made a disturbance in the auditorium) that their first argument did. We therefore lack jurisdiction over this argument as well. *See Gregory*, 444 F.3d at 743–44.

B.

Eaves and Meredith argue that they are entitled to qualified immunity on Anderson's federal handcuffing claims and to statutory immunity on his Michigan handcuffing claims because (they say) Anderson failed to provide sufficient evidence that he "experienced 'some physical injury' resulting from the handcuffing." *Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)). But that argument too simply asks us to revisit the district court's determination that Anderson presented

evidence sufficient to create a genuine issue of material fact as to these claims. *See id.* We therefore lack jurisdiction over this argument as well.

*   *   *

We dismiss the appeal for lack of jurisdiction.

RONALD LEE GILMAN, Circuit Judge, concurring. Although I agree with the ultimate conclusion reached by the lead opinion (i.e., that the defendants are not entitled to qualified immunity at this stage in the proceedings), I disagree with the portion of the opinion that dismisses the defendants' qualified-immunity defense on the basis that we lack jurisdiction over this interlocutory appeal. True enough, the defendants argue at times that the district court improperly weighed the facts, but they also explicitly acknowledge Anderson's version of the facts in arguing that, even under those facts, they had probable cause to arrest Anderson. I would therefore hold, pursuant to this court's longstanding precedent, that we have jurisdiction to answer the probable-cause issue based on Anderson's version of the facts. On the other hand, the defendants' arguments regarding Anderson's excessive-force handcuffing claim rest solely on disputed issues of fact, so I fully agree with the lead opinion that we lack jurisdiction over that portion of the appeal.

## I. Jurisdiction over denials of qualified immunity

This court maintains "jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. Denials of summary judgment are "usually considered an interlocutory order, not a final judgment, and thus not appealable to this court." *Bishop v. Hackel*, 636 F.3d 757, 764 (6th Cir. 2011) (citations omitted). But there is an exception for denials of qualified immunity. Such an order "may be deemed a final, appealable order because the qualified immunity doctrine exists partly to protect officials from having to stand trial, and a defendant wrongly forced to go to trial loses the benefit of the immunity even if exonerated after trial." *Id*. Accordingly, "[a] district court's denial of qualified immunity is an appealable final decision under 28 U.S.C. § 1291, but only 'to the extent that it turns on an issue of law'" as opposed to an issue of fact. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

This means that "a defendant denied qualified immunity may appeal only if the issue on appeal is whether the plaintiff's facts, taken at their best, show that the defendant violated clearly established law." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013). Such defendants therefore have only one option if they wish to appeal: they "must concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Estate of Carter*, 408 F.3d at 310 (internal quotation marks omitted); *see also Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998) ("[I]n order for such an interlocutory appeal based on qualified immunity to lie, the defendant must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case.").

The defendants here have wasted ink attempting to dispute some of the facts. For example, as the lead opinion points out, the defendants insist that "Anderson's loud profanity disrupted the meeting by causing onlookers to turn around and [by] creating a sense of panic in the auditorium[,]" which disputes Anderson's assertion that "[n]o panic existed in the auditorium" after he made his remark. But what the lead opinion does not address is that the defendants also repeatedly argue that the facts as proffered by Anderson established probable cause for arrest. Specifically, the defendants repeatedly maintain that, "[a]s stated by Anderson, he was loud and used profanity," which, the defendants argue, constituted probable cause that Anderson violated Mich. Comp. Laws § 750.170.

This court has explained many times what to do in "mixed" situations such as the one before us where legal and factual challenges are confused or entwined. "[W]e must 'separate an appealed order's reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is 'genuine').'" *Roberson v. Torres*, 770 F.3d 398, 402 (6th Cir. 2014) (quoting *Johnson v. Jones*, 515 U.S. 304, 319 (1995)). In other

words, "this court may simply ignore defendants' attempts to dispute plaintiffs' version of the facts, 'obviating the need to dismiss the entire appeal for lack of jurisdiction.'" *Kirby v. Duva*, 530 F.3d 475, 481 (6th Cir. 2008) (quoting *Estate of Carter*, 408 F.3d at 310) (deciding the case based on the plaintiffs' version of events).

The defendants here have conceded Anderson's version of events regarding the alleged "disturbance" in both their briefs and at oral argument. We are therefore free to ignore their impermissible attempts to dispute the facts of the case and decide the pure legal issue of whether, under Anderson's version of events, there was probable cause to arrest Anderson for violating Mich. Comp. Laws § 750.170. *See Legenzoff v. Stecker*, 564 F. App'x 136, 140 (6th Cir. 2014) (accepting interlocutory jurisdiction after the defendants conceded the plaintiff's version of events and noting that because "there is no longer an issue of fact, this Court is presented only with a pure issue of law regarding the sufficiency of the evidence for probable cause") (citing *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005)).

The same rationale, however, does not apply to the defendants' argument regarding the sufficiency of the evidence in support of Anderson's excessive-force handcuffing claim. *See Hansen v. Aper*, 746 F. App'x 511, 515 (6th Cir. 2018) (finding that the court had jurisdiction over a purely legal question related to qualified immunity, but explaining that "jurisdiction does not extend to Aper's other argument, which is that Hansen failed to produce sufficient evidence proving an injury causally related to the handcuffing"). For that reason, I fully agree with the lead opinion's conclusion that this argument presents a purely factual question over which we lack jurisdiction.

**II.** **The defendants lacked probable cause to arrest Anderson for violating Mich. Comp. Laws § 750.170**

The district court determined that Anderson's claims are centered around his stop rather than his arrest. Accordingly, the officers needed only reasonable suspicion that he committed a crime in order for the stop to be constitutional. *See Howse v. Hodous*, 953 F.3d 402, 407 n.1 (6th Cir. 2020) ("[A]n officer doesn't need probable cause to stop someone—reasonable suspicion is enough.") (citations omitted). But the defendants frame the issue on appeal to be whether they had probable cause to arrest Anderson, so I will address their defense as they have stated it. For clarity, however, I note that there was neither probable cause to arrest nor a reasonable suspicion to stop Anderson for violating Mich. Comp. Laws § 750.170.

The defendants contend that they had probable cause to arrest Anderson for allegedly violating two state statutes: Mich. Comp. Laws § 750.170, which prohibits "mak[ing] or excit[ing]" a "disturbance" in a "public building"; and Mich. Comp. Laws § 750.81d, which forbids an individual from "obstruct[ing] . . . a person who the individual knows . . . is performing his or her duties." But the defendants did not argue to the district court that they had probable cause to arrest Anderson for a violation of Mich. Comp. Laws § 750.81d (the obstruction statute), and the district court did not address that statute at all. I would therefore hold that the defendants have forfeited this argument, which leaves only the question of whether they had probable cause to arrest Anderson for violating Mich. Comp. Laws § 750.170 (the public-disturbance statute). *See United States v. Hughes*, 606 F.3d 311, 317 (6th Cir. 2010) (concluding that the municipal government had waived a specific argument about the reasonableness of a traffic stop by failing to raise the issue before the district court) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 887 n.11 (1975)).

A "disturbance" under Mich. Comp. Laws § 750.170 is defined as

> [a]ny act causing annoyance, disquiet, agitation, or derangement to another, or interrupting his peace, or interfering with him in the pursuit of a lawful and appropriate occupation or contrary to the usages of a sort of meeting and class of persons assembled that interferes with its due progress or irritates the assembly in whole or in part.

*People v. Weinberg*, 149 N.W.2d 248, 251 (1967). It "embraces more than actual or threatened violence[;]" rather, it "is an interruption of peace and quiet; a violation of public order and decorum; or an interference with or hindrance of one in pursuit of his lawful right or occupation." *People v. Rice-White*, No. 350250, 2021 WL 220801, at *2 (Mich. Ct. App. Jan. 21, 2021).

Contrary to the defendants' assertions, Anderson's loud voice and single profanity did not provide probable cause to believe that he had violated § 750.170. The circumstances here are markedly different from those in *Smith v. Walters*, 849 F. App'x 551 (6th Cir. 2021), the key case on which the defendants rely. In *Smith*, the plaintiff attended a public meeting for the city commission. After seeking and receiving permission to speak during a public-comment period, she reiterated past accusations that a local police chief had assaulted her. She was ruled out of order and directed to leave the meeting. Although she complied, she returned a short while later and whispered to a local judge in the back of the room while another citizen was speaking. The chair of the meeting saw this and motioned for two police officers to remove her, but when they approached the plaintiff, she became "animated" and caused a commotion. This court held that the officers had probable cause to believe that the plaintiff had violated § 750.170 because she "became loud enough to cause a commotion that made attendees turn around and [the mayor] to pause the meeting." *Id.* at 556.

By contrast, although Anderson spoke loudly and uttered a single profanity, he waited to be recognized before asking his question. Because he was seated 8 to 12 rows from the back of the auditorium and was not provided a microphone, he projected his voice to allow the presenters on stage to hear him. The presenters allowed him to ask his question, and they responded. There is no evidence that he was asked to leave. No one in the auditorium panicked or argued with Anderson after he made his remark. He then voluntarily left immediately after receiving a response and never came back to the auditorium.

Under these circumstances, which we must accept as true for the purpose of this appeal, the defendants lacked probable cause to believe that Anderson made or excited a disturbance under the statute. *See, e.g.*, *McKinney v. Fields*, No. 07-cv-10652, 2009 WL 816886, at *7 (E.D. Mich. Mar. 27, 2009) (concluding that because "Mich. Comp. Laws § 750.170 specifically limits its prohibition to the exciting of a 'disturbance or contention[,]' [a witness's] assertion that plaintiff's shouted complaint created no disturbance tends to show that she did not commit any of those violations"); *cf. Rice-White*, 2021 WL 220801, at *2–3 (finding probable cause to arrest the defendant for violating § 750.170 where the defendant's screaming accusations that the sheriff's deputies were "trying to rape and beat her . . . violated the courthouse's decorum, and interrupted the work of at least three clerks"); *People v. Mash*, 206 N.W.2d 767, 770 (Mich. Ct. App. 1973) (finding that the evidence was sufficient to convict the defendant for violating § 750.170 where the defendant was part of a sit-in crowd that stayed after hours at a university building and prevented the janitor from being able to perform his duties).

In sum, I respectfully disagree with the lead opinion's conclusion that this entire case rests on factual disputes. I would instead ignore the defendants' attempts to dispute the facts and proceed to the merits on the narrow legal question of whether the facts, taken in the light most

favorable to Anderson, gave the defendants probable cause to believe that Anderson violated Mich. Comp. Laws § 750.170. Because those facts show that no one was disturbed by his conduct, I would then answer that question in the negative and affirm the denial of qualified immunity to the defendants on that basis.