NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0210n.06

Case No. 23-1812

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| GIOTTO GERMANY, | ) | **FILED**<br>May 08, 2024<br>KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DEREK WATKINS, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | OPINION |

Before: BATCHELDER, THAPAR, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Giotto Germany was involved in a dispute with someone who claimed to rent a room at his home. Police officer Derek Watkins came to Germany's home to try to resolve the dispute. Germany apparently did not like Watkins's proposed resolution because he called 911 while Watkins was still there to report his disagreement. Upon witnessing the call, Watkins arrested Germany for violating a city ordinance against making false alarms. Germany sued Watkins for—among other things—allegedly violating his First and Fourth Amendment rights. The district court granted summary judgment to Watkins, finding that he was entitled to qualified immunity. We affirm.

## I.

Giotto Germany owns a mobile home in Warren, Michigan. In January 2020, Renee Valenti called 911 to report an ongoing dispute between her and Germany happening at the home.

Officer Watkins—a Warren police officer—responded. The 911 dispatcher informed Watkins that officers had already visited the home several times in the last 24 hours about this dispute.

Germany and Valenti were at the mobile home when Watkins arrived. Valenti informed Watkins that she had been renting a bedroom from Germany since the beginning of the month, that her personal belongings (including a wheelchair) were stored inside, and that Germany was threatening to throw them out. Watkins told Germany that Valenti had "established residency" to the bedroom and that Germany needed to follow eviction procedures if he no longer wanted her there. Watkins also chastised the two for making unnecessary 911 calls, claiming that officers had been dispatched to the home "over the last few days" for several non-emergencies related to the same civil issue.

When Germany insisted that he had a right to enter the bedroom to grab his "stuff," Watkins told Germany that he had to give Valenti 24 hours' notice before doing so. At that moment—and while standing a mere six feet away from Watkins—Germany made this 911 call:

| | |
|---|---|
| 911 Operator: | 911. |
| Germany: | Hello, uh yeah, one officer is telling me I can't come in my own room. |
| 911 Operator: | Where are you at? |
| Germany: | I'm at my house, 2633 Minerva Street in a, and I have a recording of another officer that . . . |
| Germany: | [Interrupting] Okay. Hold on, hold, hold on. |

[NO AUDIO FOR APPROXIMATELY 20 SECONDS]

| | |
|---|---|
| 911 Operator: | Hello. |
| Germany: | Yes. |
| 911 Operator: | You're calling 911 and you're out there with officers, talk with them. |
| Germany: | Yeah, one officer is telling me different and saying that I am breaking the law if I go in my |

- 2 -

|              | room with my stuff touching my property and I have to work on my . . . |
|--------------|------------------------------------------------------------------------|
| 911 Operator: | [Interrupting] You have officers out there right now. What is it you would like me to do? |
| Germany:     | Right. But one officer has . . . hold on, one second. |
| 911 Operator: | You're not going to tell me to hold on. |

[HANGS UP]

After witnessing the call and confirming with dispatch that Germany called 911, Watkins arrested Germany. His police report explains that "G[ermany] was advised multiple times on the proper eviction process but continued to advise me that I was wrong. While I was speaking to G[ermany], he called 911 and advised WPD Dispatch that I was giving him incorrect information about the eviction process." R. 56-7, PageID 1131. Watkins's warrant request stated that Germany "called 911 in the presence of an officer while there was no emergency situation to call for." R. 56-8, PageID 1136.

Eventually, Germany was charged with violating Section 22-24(b) of Warren's Code of Ordinances ("False Alarm Ordinance"). After the criminal complaint against Germany was dismissed, he sued Watkins in federal court.

Germany's complaint raised claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, and retaliatory arrest. He also brought claims for false imprisonment, malicious prosecution, and intentional infliction of emotional distress under Michigan law. Watkins moved for summary judgment against all claims, arguing—among other things—that Germany's § 1983 claims were barred by qualified immunity. In response, Germany moved for partial summary judgment, claiming that he was entitled to judgment on his § 1983 false-arrest and malicious-prosecution claims.

The district court granted summary judgment to Watkins, finding that he was entitled to summary judgment on Germany's § 1983 claims. The district court also denied Germany's motion for partial summary judgment and declined to exercise supplemental jurisdiction over his state-law claims. *See* 28 U.S.C. § 1367(c)(3). This appeal followed.

## II.

We review a district court's decision to grant summary judgment de novo. *Puskas v. Delaware Cnty.*, 56 F.4th 1088, 1093 (6th Cir. 2023). Summary judgment is appropriate when the evidence presented shows there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We also review de novo the grant of qualified immunity. *Adams v. Blount Cnty.*, 946 F.3d 940, 947 (6th Cir. 2020).

## III.

Section 1983 of Title 42 of the United States Code creates a cause of action allowing a person to vindicate the violation of his constitutional rights. To succeed on a § 1983 claim, a plaintiff must prove: (1) "a right secured by the United States Constitution," and (2) "the deprivation of that right by a person acting under color of state law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (citation omitted).

The qualified immunity doctrine shields government officials from § 1983 liability under certain circumstances. Specifically, government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Such immunity is an expression of policy designed to aid in the effective functioning of government," *Dunigan v. Noble*, 390 F.3d 486, 490–91 (6th Cir. 2004) (citation omitted), giving officials "breathing room to make

reasonable but mistaken judgments about open legal questions" so that only the "plainly incompetent or those who knowingly violate the law" are subject to suit, *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted). Thus, an official is "entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citation omitted). Once raised, the plaintiff bears the burden of establishing both elements. *Id.*

Germany brought § 1983 claims against Watkins for Fourth Amendment false arrest, Fourth Amendment malicious prosecution, and First Amendment retaliation. We address each claim in turn.

**A.**

*False Arrest.* The Fourth Amendment prohibits unreasonable seizures by police officers. U.S. Const. amend. IV. "[A] warrantless arrest . . . is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause exists where "the facts and circumstances within the officers' knowledge [are] sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed." *Hartman v. Thompson*, 931 F.3d 471, 481 (6th Cir. 2019) (alteration in original) (quoting *Fox v. Desoto*, 489 F.3d 227, 236 (6th Cir. 2007)). In reviewing a district court's summary-judgment decision, "our inquiry . . . must be whether sufficient facts are in dispute with respect to probable cause to require fact-finding by a jury." *Alman v. Reed*, 703 F.3d 887, 896 (6th Cir. 2013) (quoting *Hale v. Kart*, 396 F.3d 721, 729 (6th Cir. 2005)).

The undisputed facts show that Watkins had probable cause to believe that Germany violated the False Alarm Ordinance. That ordinance makes it illegal for a person to "summon, as a joke or prank, or otherwise without good reason therefor, in any manner whatsoever, the police or fire department . . . to go to any address where such service is not required." The record demonstrates that Watkins responded to Valenti's call and that he was informed of several 911 calls already made from the home in the past 24 hours. When Watkins arrived, Valenti told him that she was renting a bedroom at Germany's home and that Germany was disclaiming their living arrangement. Watkins informed Germany that Valenti "established residency," and that he needed to follow eviction procedures if he wanted her gone. Germany acknowledged this but insisted that he could enter the bedroom as he pleased. Watkins disagreed and advised Germany that he could not enter the bedroom without providing sufficient notice.

This entire interaction lasted approximately 20 minutes, and no emergency ever arose. Yet Germany called 911 to report the very same landlord-tenant dispute that Watkins was already handling. Calling 911, as Germany and Watkins knew, would have the impact of summoning law enforcement to Germany's property. There was no "good reason" for Germany to make the 911 call as Watkins was already at the property attempting to resolve the dispute between Germany and Valenti. And because Watkins was standing a mere six feet away, he watched Germany violate the False Alarm Ordinance in real time. So "based on the facts and circumstances within [Watkins's] knowledge," there was enough "reasonably trustworthy information" for a "prudent" person to believe that probable cause existed at the time of Germany's arrest. *Peet v. City of Detroit*, 502 F.3d 557, 563–64 (6th Cir. 2007) (internal quotation marks omitted).

Germany disagrees. He argues that he did not summon police to his home during the 911 call. And to the extent that he summoned the police to his home, he argues that he had a good reason for doing so. True, Germany did not request police services during the 911 call. But as we have previously explained, "[t]he whole point of the 911 system is to provide people in need of emergency assistance an expeditious way to request it." *Johnson v. City of Memphis*, 617 F.3d 864, 870 (6th Cir. 2010). So Germany's call to 911 had the effect of summoning police to his home even though Watkins was already there. And the substance of the 911 call indicates that he did not have a good reason to request emergency services. Germany called 911 because he disagreed with instructions Watkins gave him to handle the landlord-tenant dispute with Valenti. Thus, Watkins had probable cause to arrest Germany for violating the False Alarm Ordinance and he was entitled to qualified immunity on Germany's false-arrest claim.

**B.**

*Malicious prosecution.* The Fourth Amendment guards against "the wrongful initiation of charges without probable cause." *Thompson v. Clark*, 596 U.S. 36, 43 (2022). A Fourth Amendment malicious-prosecution claim "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quotation omitted). A malicious-prosecution claimant must prove: "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *France v. Lucas*, 836 F.3d 612, 625 (6th Cir. 2016) (citing *Sykes*, 625 F.3d at 308–09).

Germany's malicious-prosecution claim fails for the same reason as his false-arrest claim—Watkins had probable cause to arrest him for violating the False Alarm Ordinance.

**C.**

*First Amendment retaliation.* Germany contends that he had a First Amendment right to call 911 and that Watkins arrested him for exercising that right. Generally, "'the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To succeed on a First Amendment retaliation claim, Germany must prove that: (1) he engaged in protected conduct, (2) Watkins took an adverse action against him, and (3) there is a causal connection between his protected conduct and the adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves*, 139 S. Ct. at 1724. The *Nieves* Court announced "a narrow qualification" to this general rule— "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 1727.

Because Watkins had probable cause to arrest Germany, his First Amendment retaliation claim will fail unless he fits within the narrow qualification. But Germany has forfeited his claim that the *Nieves* narrow qualification applies because he failed to raise this argument before the district court. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022). Although we can consider forfeited arguments in "exceptional situations," *id.* at 1012 (internal quotation marks omitted), we have "rarely exercised such discretion," *Hayward v. Cleveland*

*Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014) (quotation omitted).  And Germany has not shown that this is an exceptional situation.

## IV.

For the foregoing reasons, we affirm the district court's judgment.